ROBERTSON (WILSON v.). See Case No. 17,830.

ROBERTSON, The (YOUNG v.). See Case No. 11,923.

---

## Case No. 11,931.

### ROBIN et al. v. The CACIQUE.

[24 Niles' Reg. 255.]

District Court, E. D. Pennsylvania. May 31, 1823.

FOREIGN SEAMEN — BREAKING UP OF VOYAGE — TRANSFER TO DIFFERENT VESSEL — ADMIRALTY JURISDICTION.

[A French vessel arriving in the port of Philadelphia was dismantled there, and her crew transferred to another French vessel, which was bound to Martinique, by the French consul, pursuant to official authority conferred by the French government upon its consular agents. Indorsements were made upon the shipping articles, stating the circumstances, and directing payment of wages earned on board both vessels. Thereupon the seamen libeled the dismantled vessel for their wages, claiming that they were entitled to the same because the voyage was broken up. *Held*, that matters of this character were exclusively within the control of the laws of France, and that the American courts had no authority to interfere, in the absence of a capricious or wanton breaking up

of the voyage, or of any evidence of oppression or imposition, but that, if the seamen were in want of anything necessary to their subsistence or comfort, the court would see that it was furnished, to be paid for out of their wages.]

This was a case of importance to the maritime world. The libellants [Rene Louis Robin and others] were seamen who arrived in the port of Philadelphia, on board the French brig Cacique, Capt. Raymond Roy, which vessel was dismantled here, and her crew transported to another French vessel, called the Robert Eugene, Capt. Saulnier, by Mr. Delaforest, the French consul, pursuant to the official authority, for such purpose, conferred by the French government on its consular agents in foreign countries. The transfer was made by endorsements on the shipping articles, stating the circumstance, and directing payment of the wages, earned by the mariners on board the Cacique, when they should be at sea on board the Eugene. On this change of their destination, the crew of the Cacique libelled for their wages, alleging that the voyage of that vessel was broken up without their fault, and that, in such a case, it had been the practice of the admiralty court in America to compel payment of seamen's wages in the country where their voyage was thus terminated. To this the French consul made answer, that he was not only authorized but instructed to deal with these men as he had done; that there was no danger of their being left here to suffer or become burthensome; but that their transportation to their own country had been provided for in the best way that circumstances admitted of. It was also urged, that, according to the 6th article of the treaty of the 24th June, 1822, between France and the United States, these men were deserters, and, as such, liable to be seized and forcibly restored to the vessel to which the consul had assigned them. In reply for the men, it was represented that the consul was not about to send them home to France, but to Martinique, without any additional allowance for thus changing and prolonging their voyage, and exposing them to the influence of sickly latitudes. On the one side it was contended that foreign courts never interfere, as to mariners' contracts, between them and their superior officers, owners or consuls. On the other side it was insisted that all courts interpose in such cases, to prevent injustice and oppression to the mariners; and several cases, determined by Judge Peters and Sir Wm. Scott, were referred to and explained. The proceedings were commenced on the 27th May, and the case was argued on the 30th and 31st May.

Mr. Ewing, for libellants.

Ingersoll & Keating, for respondents.

On the latter day, PETERS, District Judge, premising the importance of the case, and his willingness to give it a more deliberate consideration, if desired by either party, pronounced his impression to be against the men's claim for wages. He said, if there was any hardship or ill treatment complained of, or proved, he would not hesitate to interpose, as he had often done in similar cases, but that no such ground was laid for his intervention. The seamen say they want to be sent directly home in an American vessel, preferring the New York packets to Havre. But to such a wish it is impossible to accede. Their consul must send them home, and of course must have a reasonable discretion as to the mode of doing so. Seamen, by the laws and usages of all countries, belong to the nation. In other countries the courts would assist our consuls in restoring American seamen to their own country, and our courts should perform the same good office towards foreign consuls endeavoring to send home their seamen from this country; always, to be sure, under the superintendence of the courts, to see that no hardship or imposition is practiced on the seamen. In this instance, a great deal of forcible argument has been addressed to the court, to show that the voyage is broken up here. But this court cannot enter into that question. That is an affair for the French tribunals. Their laws, like the laws of all countries, settle these matters on their own principles We have nothing to do with such disputes here; nor could a French court do with them, between the crew of an American vessel and their superiors. It is certain, and that is enough, that there has been no capricious or wanton breaking up of the Cacique's voyage. It would be a most unreasonable thing that these men should remain here, a charge to her owners, after that vessel is laid up.

There is danger, at this time, to any French vessel going to sea. A war has broken out between France and Spain. A change of voyage becomes a matter of necessity, of prudent provision against the contingencies of war. Now, who is to judge what is best in such an exigency? The mariners, who cannot know much about it, or the consuls, who, as public functionaries, may be supposed to be informed of the views and course of their government? Sending these men to Martinique, was no hardship imposed on them, provided the consul is acting honorably, as I presume he is, and as I shall take care to ascertain as far as I can. Martinique is a French island, a place of rendezvous for the French marine, where convoy may be obtained to France. To send a merchant vessel now to the coast of France without convoy, would be exposing her crew to peril of capture and captivity. Nor would their going in an American vessel protect them from Spanish belligerent search and apprehension. Though found on board an American vessel, they would be taken prisoners as enemies. The men are secured their wages. The consul has given written orders

endorsed on the shipping articles, which places that point out of all doubt. They are going home, where their country requires them. They will receive their wages, either at sea or at home, for the whole period they will have served on board the Cacique and the Eugene. There is no occasion for an American court's compelling payment of their wages here, to prevent their suffering in this country, or becoming burthensome to it; and none of the cases read during the argument have gone so far as to determine, that, under such circumstances, an American court of admiralty will interfere, to enforce the payment of wages to foreign seamen in our ports. If they are in want of anything necessary to their subsistence or comfort, they must have it; and this court will take care, as in former instances, to see that it is furnished; to be paid for out of their wages.

On this opinion the affair was arranged. The consul advanced them money, to be deducted from their wages, to pay for whatever clothing they wanted, and for their board while ashore in Philadelphia, and, thus provided, the men repaired on board the Eugene, which vessel had already cleared out, and sailed immediately for Martinique.